JUSTICE THOMAS delivered the judgment of the court, with opinion. Chief Justice Fitzgerald and Justices Kilbride, Gar-man, and Karmeier concurred in the judgment and opinion. Justice Freeman specially concurred, with opinion. Justice Burke concurred in part and dissented in part, with opinion. OPINION This case presents two issues: (1) whether the trial court erred in summarily dismissing defendant’s pro se postconviction petition as frivolous and patently without merit, and (2) whether the imposition of a 10-year prison term consecutive to a natural-life prison term was void in this case. BACKGROUND Following a jury trial, defendant, Shawn Petrenko, was convicted of one count of first degree murder (720 ILCS 5/9 — 1 (West 2000)) and one count of residential burglary (720 ILCS 5/19 — 3 (West 2000)). The circuit court of Kankakee County sentenced him to a term of natural life in prison for the first degree murder conviction and a consecutive term of 10 years in prison for the residential burglary. Defendant appealed, and the appellate court affirmed both the convictions and the sentences. People v. Petrenko, No. 3—02—0507 (2005) (unpublished order under Supreme Court Rule 23). Defendant later filed a 17-page pro se postconviction petition raising 31 separate claims. The trial court summarily dismissed the petition as frivolous and patently without merit, and defendant appealed. On appeal, defendant argued that the summary dismissal of his petition was improper because two of his ineffective assistance of counsel claims stated the gist of a meritorious constitutional claim. In addition, defendant argued for the first time that, under this court’s decision in People v. Palmer, 218 Ill. 2d 148 (2006), his consecutive term of years was void and must be modified to run concurrently with the natural-life term. The appellate court rejected both of defendant’s arguments, finding that summary dismissal was proper and that defendant had forfeited the Palmer argument by not raising it previously. 385 Ill. App. 3d 479. We allowed defendant’s petition for leave to appeal. 210 Ill. 2d R 315. ANALYSIS Before this court, defendant raises the same two arguments that he raised below. First, defendant argues that he received ineffective assistance of both trial counsel and appellate counsel. According to defendant, his trial counsel was ineffective for failing to request a Franks hearing to contest the validity of a search warrant (see Franks v. Delaware, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)), and his appellate counsel was ineffective for failing to raise trial counsel’s ineffectiveness as an issue on direct appeal. Second, defendant argues that, under Palmer, his 10-year sentence for residential burglary must be modified to run concurrently with, rather than consecutively to, his natural-life term. Summary Dismissal The Post-Conviction Hearing Act The Post-Conviction Hearing Act (725 ILCS 5/122 — 1 et seq. (West 2006)) provides a method by which persons under criminal sentence can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. See 725 ILCS 5/122 — 1 et seq. (West 2006). A circuit court may summarily dismiss a postconviction petition if it determines that the petition is “frivolous or is patently without merit.” 725 ILCS 5/122 — 2.1(a)(2) (West 2006). This court recently explained that a petition is frivolous or patently without merit only if it has no “arguable basis either in law or in fact.” People v. Hodges, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. Hodges, 234 Ill. 2d at 16. A petition lacks an arguable basis in fact if it is based upon a fanciful factual allegation, such as one that is clearly baseless, fantastic or delusional. Hodges, 234 Ill. 2d at 16-17. The summary dismissal of a postconviction petition is a legal question that is subject to de novo review. People v. Coleman, 183 Ill. 2d 366, 388-89 (1998). Here, defendant’s pro se petition alleged that both his trial counsel and his appellate counsel provided ineffective assistance. Ineffective assistance of counsel claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in People v. Albanese, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel’s performance was deficient and that the deficient performance prejudiced the defendant. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. More specifically, the defendant must demonstrate that counsel’s performance was objectively unreasonable under prevailing professional norms and that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. The Strickland standard applies equally to claims of ineffective appellate counsel, and a defendant raising such a claim must show both that appellate counsel’s performance was deficient and that, but for counsel’s errors, there is a reasonable probability that the appeal would have been successful. People v. Golden, 229 Ill. 2d 277, 283 (2008). At the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel’s performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced. Hodges, 234 Ill. 2d at 17. Although defendant raised numerous ineffective assistance of counsel claims in his pro se petition, only two of those claims are at issue in this appeal. The first is that defendant’s trial counsel was ineffective for failing to contest the validity of the search warrant that was issued for defendant’s home. The second is that defendant’s appellate counsel was ineffective for failing to raise trial counsel’s error as an issue on direct appeal. In support of these claims, defendant maintains that the officer who requested the search warrant for defendant’s home “knowingly and with reckless disregard for the truth included false statements” in the affidavit he submitted in support of the warrant application. In that affidavit, the officer informed the court that the victim, Rubin Rivas, was found face down and dead in his home, having been bludgeoned to death with “a hammer, or similar object.” Rivas lived in one unit of a duplex, with defendant and his family occupying the other. According to the officer, the evidence linking defendant to the crime included the following: a left-handed white glove with red, blue, and white paint on it that was found in Rivas’s house; a right-handed white glove with red, blue, and white paint on it that was found in defendant’s garbage; mail addressed to Rivas that was found in defendant’s garbage; a small metal object broken off in the lock of Rivas’s back door; a broken key with the tip missing that was found in defendant’s garbage; and a fingerprint from defendant that was found in Rivas’s home on an empty ceramic jar in which Rivas was known to keep his rent money in cash. Based on this information, the circuit court issued a search warrant for defendant’s home, where additional evidence was found linking defendant to the murder. According to defendant, the record shows that the officer who requested the search warrant for defendant’s home intentionally omitted from the supporting affidavit certain information that, if disclosed, would have negated the presence of probable cause. Specifically, defendant contends the officer’s trial testimony shows that, at the time he requested the warrant, the officer knew that defendant had been a guest in Rivas’s home approximately five days before the murder. This information, defendant insists, provided a lawful explanation for the presence of defendant’s fingerprint on the empty money jar and therefore would have precluded a probable cause finding if disclosed. Accordingly, defendant’s trial counsel was ineffective for failing to contest the validity of both the warrant and the evidence it produced, once the officer’s knowledge was disclosed at trial. In addition, defendant argues that his appellate counsel was ineffective for failing to raise trial counsel’s ineffectiveness as an issue on direct appeal. After thoroughly reviewing both defendant’s petition and the supporting record, we conclude that the trial court properly dismissed defendant’s pro se petition as frivolous and patently without merit. To begin with, defendant has clearly forfeited his claim that trial counsel was ineffective for failing to contest the validity of the search warrant. A postconviction proceeding is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings. People v. Johnson, 191 Ill. 2d 257, 268 (2000). Consequently, issues that could have been raised on direct appeal but were not are forfeited. People v. Enis, 194 Ill. 2d 361, 375 (2000). Here, defendant’s claim concerning trial counsel’s failure to contest the validity of the search warrant is based entirely on facts contained in the trial court record. That claim therefore could have been raised on direct appeal, and defendant’s failure to do so results in its forfeiture. That leaves defendant’s claim that his appellate counsel was ineffective for failing to raise trial counsel’s error. Unlike defendant’s claim for ineffective assistance of trial counsel, this claim is not forfeited, as this court has elected to relax the ordinary forfeiture rules with respect to postconviction claims stemming from appellate counsel’s ineffectiveness. See People v. Williams, 209 Ill. 2d 227, 233 (2004). The question, therefore, is whether defendant’s ineffective assistance of appellate counsel claim has no arguable basis either in law or in fact — that is, whether it is based on either an indisputably meritless legal theory or a factual allegation that is clearly baseless, fantastic or delusional. Hodges, 234 Ill. 2d at 16-17, We will begin with the claim’s legal basis. Legal Basis In Franks, the United States Supreme Court recognized a limited right to challenge the veracity of the affidavit supporting a search warrant. In order to overcome the presumption of validity that attaches to a warrant affidavit and obtain a Franks hearing, a defendant must make a “substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit” and that “the allegedly false statement is necessary to the finding of probable cause.” Franks, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676. A “substantial preliminary showing” is made where the defendant offers proof that is “somewhere between mere denials on the one hand and proof by a preponderance on the other.” People v. Lucente, 116 Ill. 2d 133, 151-52 (1987). If, after the alleged untruths in the warrant affidavit are set aside, the remaining statements in the affidavit are sufficient to establish probable cause, no hearing is required. Franks, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684. The principles underlying the Franks decision also apply where information necessary to a determination of probable cause is intentionally or recklessly omitted from the affidavit. People v. Stewart, 105 Ill. 2d 22, 43 (1984). In such cases, “[t]he defendant must show that the information omitted was material to the determination of probable cause and that it was omitted for the purpose of misleading the magistrate.” Stewart, 105 Ill. 2d at 44. Omitted information is “material” where it is of such a character that had it been included in the affidavit it would have defeated probable cause. People v. Hickey, 178 Ill. 2d 256, 282 (1997). Here, defendant insists that had the requesting officer disclosed the fact that defendant had been in Rivas’s home lawfully just days before the murder, the issuing judge would not have found probable cause to issue the warrant because defendant’s lawful presence in the home provides an innocent explanation for the presence of defendant’s fingerprint at the crime scene. We disagree. We are dealing here not with a trial, but with a probable cause hearing, where the State’s burden is substantially lower. At a probable cause hearing, the trial court’s task is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, there is “ ‘a fair probability that contraband or evidence of a crime will be found in a particular place.’ ” People v. Hickey, 178 Ill. 2d 256, 285 (1997), quoting Illinois v. Gates, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332 (1983). In other words, the probable cause requirement is “rooted in principles of common sense.” Hickey, 178 Ill. 2d at 285. Setting aside for the moment the additional evidence that the requesting officer included in his affidavit, we are here faced with the rather compelling fact that defendant’s fingerprint was found not simply at the crime scene, but rather on an empty ceramic jar in which the murder victim was known to keep upwards of $450 in cash. Whether or not defendant’s prior lawful presence in Rivas’s home was disclosed to the issuing judge, the presence of defendant’s fingerprint in that particular location is sufficient, probably by itself, to establish probable cause. In other words, had the requesting officer disclosed the allegedly withheld information, the weight of the fingerprint evidence would not have changed for purposes of probable cause. Now add to this the fact that defendant’s fingerprint was not the only evidence described to the issuing judge, but was in fact included among other things such as the right-handed glove, the mail addressed to Rivas, and the broken key (all of which were found in defendant’s trash), and there is simply no possibility that the disclosure of defendant’s prior lawful presence at the murder scene would have impacted, let alone defeated, the trial court’s probable cause finding. In short, defendant’s prior lawful presence in Rivas’s home was not “material information” for purposes of Franks. This is because, even had it been disclosed in the supporting affidavit, it would not have defeated or in any way undermined the trial court’s probable cause finding. Accordingly, any argument premised upon trial counsel’s failure to request a Franks hearing would not have succeeded on direct appeal. For these reasons, we find that there is no arguable legal basis for defendant’s ineffective assistance of appellate counsel claim and that summary dismissal of his pro se postconviction therefore was proper. In reaching this result, we note that, both in the appellate court and before this court, defendant argued that the requesting officer showed additional reckless disregard for the truth by failing to disclose in the supporting affidavit that the mail found in defendant’s trash was several months old. According to defendant, this omission would have provided an additional basis for requesting a Franks hearing, and trial counsel’s failure to request one, as well as appellate counsel’s failure to raise trial counsel’s oversight as an issue on direct appeal, therefore amounted to ineffective assistance. The problem with this argument is that it was not raised in the petition that defendant filed in the trial court. In People v. Jones, 211 Ill. 2d 140, 148 (2004), this court explained that “ ‘[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.’ ” (Emphasis in original.) Thus, any issues to be reviewed must be presented in the petition filed in the circuit court, and a defendant may not raise an issue for the first time while the matter is on review. Jones, 211 Ill. 2d at 148. Here, defendant argued in his pro se petition that trial counsel was ineffective for failing to contest the validity of the February 3, 2000, search warrant that was issued for his home. According to defendant, trial counsel should have contested that warrant because (1) the requesting officer withheld from the issuing judge facts that, if disclosed, would have provided an innocent explanation for the presence of defendant’s fingerprint at the crime scene; and (2) the remaining evidence described in the affidavit, including the gloves, the broken key, and the “mail 7, 8, 9 months old addressed to the victim,” failed to establish probable cause. Thus, while defendant’s Franks-based ineffectiveness claims mention the age of the mail that was found in defendant’s trash, they do not mention it as an example of information that was wrongfully withheld from the issuing judge. Rather, they mention it only in the context of arguing that the remaining evidence, including the mail, was insufficient to support a probable cause finding. For this reason, we hold that defendant has forfeited any ineffectiveness claims on review that are premised upon the requesting officer’s alleged failure to disclose the age of the mail found in defendant’s trash. Jones, 211 Ill. 2d at 148. Consecutive Sentencing Defendant next argues that his 10-year sentence for residential burglary must be modified to run concurrently with, rather than consecutively to, his natural-life term. In support, defendant cites this court’s decision in People v. Palmer, 218 Ill. 2d 148 (2006). The State responds first by arguing that defendant has forfeited this argument because he raised it for the first time on appeal from the summary dismissal of his postconviction petition. In the alternative, the State argues that Palmer does not apply to this case. We begin with the forfeiture question. It is well settled that a sentence that is in conflict with statutory guidelines is void and may be challenged at any time. People v. Roberson, 212 Ill. 2d 430, 440 (2004). In Palmer, this court held that the imposition of consecutive sentences in that case was “contrary to the legislature’s intent” and therefore void. Palmer, 218 Ill. 2d at 163. Here, defendant is arguing that his consecutive sentences are indistinguishable from those at issue in Palmer and therefore void for the very same reasons. This is clearly a voidness challenge, and defendant has not forfeited it. As for the merits of defendant’s voidness claim, we find that defendant’s reliance on Palmer is misplaced. Palmer was convicted of seven separate Class X felonies. Prior to sentencing, the State filed a petition to have him declared an habitual criminal under the Habitual Criminal Act (Act) (720 ILCS 5/33B — 1 et seq. (West 2000)). The trial court granted the State’s petition and, pursuant to the Act, sentenced Palmer to natural-life terms on all seven counts. In addition, the trial court found that Palmer was eligible for consecutive sentencing under section 5 — 8—4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5 — 8—4(a) (West 2000)). Accordingly, the trial court ordered that all seven of Palmer’s natural-life terms be served consecutively. Before this court, Palmer argued, inter alia, that the trial court erred in ordering his natural-life sentences to run consecutively. We agreed, finding that, because the Habitual Criminal Act is a “separate sentencing scheme” from that set forth in the Unified Code of Corrections, defendants who are sentenced pursuant to the Act are not subject to the consecutive-sentencing provisions found in section 5 — 8—4(a) of the Code. Accordingly, the trial court’s imposition of consecutive sentences was void for lack of statutory authority, and this court modified Palmer’s sentences to run concurrently. Palmer, 218 Ill. 2d at 163-64. Palmer, then, stands simply for the proposition that defendants sentenced to natural life in prison under the Habitual Criminal Act are not subject to the consecutive-sentencing provisions of the Unified Code of Corrections. In this case, defendant’s natural-life sentence was not imposed under the Habitual Criminal Act. Rather, it was imposed under section 5 — 8—1(a)(1)(b) of the Unified Code of Corrections (730 ILCS 5/5 — 8—1(a)(1)(b) (West 2000)). Consequently, Palmer’s prohibition on consecutive sentencing has no application to this case. At the same time, defendant does not dispute that he falls squarely within the class of defendants for whom section 5 — 8—1(a)(1)(b) specifically mandates consecutive sentencing. In other words, while defendant insists that his consecutive sentences are void, he has identified nothing in either the Unified Code of Corrections or in this court’s jurisprudence that in any way prohibits consecutive sentencing in this case. We therefore reject defendant’s voidness challenge and affirm both of his sentences, as imposed. In reaching this result, we acknowledge that, after concluding that Palmer was never even subject to section 5 — 8—4(a), the court nevertheless went on to discuss the propriety of imposing consecutive natural-life sentences under that very section. See Palmer, 218 Ill. 2d at 164-70. Indeed, the court even went so far as to “hold” that section 5 — 8—4(a) does not allow for the imposition of consecutive natural-life sentences, “both according to natural law and within the plain meaning of [section 5 — 8—4(a)].” Palmer, 218 Ill. 2d at 164-65. We now recognize that the entire discussion of section 5 — 8— 4(a), and more specifically any “holding” with respect to the imposition of consecutive natural-life sentences pursuant to that section, was a mistake. This is because, once the court concluded that Palmer was never even eligible for consecutive sentencing under section 5 — 8— 4(a) in the first place, anything it went on to say about the impossibility of serving consecutive natural-life sentences could in no way affect the outcome of that case. The analysis at that point became largely advisory (see In re Barbara H., 183 Ill. 2d 482, 490-91 (1998) (a decision is advisory if it cannot result in appropriate relief to the prevailing party)), and this court has long expressed its reluctance to consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issue is decided (Barth v. Reagan, 139 Ill. 2d 399, 419 (1990)). Moreover, we now recognize that our discussion of section 5 — 8—4(a) was incorrect on the merits. In Palmer, the court was faced with an extreme and somewhat absurd fact pattern: a defendant who was ordered to serve seven consecutive natural-life sentences. In reaction to this set of facts, the court expressed its disapproval of a statutory sentencing scheme that can produce sentences that no human being could ever realistically serve. However, this court has long recognized that the legislature has the power to determine the appropriate punishment for criminal conduct (People v. Taylor, 102 Ill. 2d 201, 205 (1984)), and the judiciary is bound to fashion sentences within the parameters set forth by the legislature (People v. Wooters, 188 Ill. 2d 500, 506 n.l (1999)). The legislature has determined that the imposition of consecutive natural-life sentences serves a legitimate public policy goal, and even if its effect is purely symbolic, it is within the purview of the legislature to make that determination. Our discussion of section 5 — 8—4(a) in Palmer has resulted in a series of lower court decisions that go far beyond rectifying the specific absurdity the court faced in Palmer. See, e.g., People v. Ramey, 393 Ill. App. 3d 661, 670-71 (2009) (holding that Palmer prohibits the imposition of any sentence consecutive to a natural-life term); People v. Williams, 385 Ill. App. 3d 359, 371 (2008) (same); People v. Waldron, 375 Ill. App. 3d 159, 161 (2007) (same); People v. Dixon, 366 Ill. App. 3d 848, 856 (2006) (same). This court neither intended nor envisioned that its decision in Palmer would jeopardize the enforcement of section 5 — 8—4(a) in such cases, and we therefore overrule the portion of Palmer holding that the imposition of consecutive natural-life sentences is impermissible both under section 5 — 8—4(a) and under natural law. From this point forward, the courts of this state are to enforce section 5 — 8—4(a) as written and without regard to the practical impossibility of serving the sentences it yields. Of course, we would be remiss in making this determination without addressing the doctrine of stare decisis. That doctrine “ [1] “expresses the policy of the courts to stand by precedents and not to disturb settled points.” ’ ” People v. Colon, 225 Ill. 2d 125, 145 (2007), quoting People v. Caballes, 221 Ill. 2d 282, 313 (2006), quoting Neff v. George, 364 Ill. 306, 308-09 (1936). However, stare decisis is not an “inexorable command,” and “[i]f it is clear a court has made a mistake, it will not decline to correct it.” Colon, 225 v. 2d at 146. It is clear that a mistake was made in Palmer, and we have good cause to rectify it in this case.[1] CONCLUSION In sum, we conclude both that the summary dismissal of defendant’s pro se postconviction petition was proper and that the imposition of consecutive sentences was not void. The judgment of the appellate court therefore is affirmed. Affirmed. In his special concurrence, Justice Freeman states that the Palmer majority likewise erred in holding that defendants sentenced to natural life in prison under the Habitual Criminal Act are not subject to the consecutive-sentencing provisions of the Unified Code of Corrections. This case, however, does not present an opportunity to pass on that matter directly, as unlike the defendant in Palmer, defendant here was not sentenced under the Habitual Criminal Act.