2021 IL App (1st) 191263-U

SIXTH DIVISION
June 30, 2021

No. 1-19-1263

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | No. 17 CR 12109 |
| v. | ) | |
| | ) | Honorable |
| ALBERT EVANS, | ) | Joan Margaret O'Brien, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's claim of ineffective assistance of trial counsel for failure to request continuances over defendant's objection fails because he cannot establish deficient performance.

¶ 2    On April 16, 2019, defendant Albert Evans entered open pleas of guilty to one count of being an armed habitual criminal (AHC), two counts of unlawful use of a weapon by a felon (UUWF), and four counts of aggravated unlawful use of a weapon (AUUW). On May 16, 2019, the trial court merged certain counts and sentenced Mr. Evans to concurrent prison terms of nine years for being an AHC (720 ILCS 5/24-1.7(a) (West 2016)) and six years for UUWF (720 ILCS

5/24-1.1(a) (West 2016)). On appeal, Mr. Evans contends that he was denied effective assistance when, in the face of Mr. Evans's repeated objections to any continuances, his trial counsel failed to override that preference and secure continuances in order to obtain and review potentially mitigating evidence prior to sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Following his arrest, Mr. Evans was charged by indictment with one count of being an AHC, two counts of UUWF, and four counts of AUUW.

¶ 5     On April 16, 2019, defense counsel told the trial court that Mr. Evans requested a conference under Supreme Court Rule 402 (eff. July 1, 2012). The State declined to participate. The trial court told Mr. Evans he could enter a blind plea, and Mr. Evans asked to confer with counsel. Afterwards, Mr. Evans entered a blind plea to all seven counts of the indictment.

¶ 6     The trial court admonished Mr. Evans regarding the charges, the sentencing ranges, and the rights he waived by entering a plea. The court told Mr. Evans that being an AHC was a Class X felony, with a sentencing range of 6 to 30 years in prison. Based upon his criminal background, Mr. Evans was eligible for an extended-term sentence for UUWF of 3 to 14 years in prison. Mr. Evans responded that he understood, wished to plead guilty, and was doing so freely and voluntarily.

¶ 7     As a factual basis, the State explained that on July 22, 2017, a Chicago police officer observed Mr. Evans place a handgun in his front pants pocket and chased Mr. Evans to a residence. The door was locked, but a minute later, Mr. Evans and Latooia Brown came to the door. Mr. Evans told the officer that he had "weed," handed over plastic wrap containing a green leafy substance, and was arrested. Ms. Brown stated that she was the mother of Mr. Evans's children, but Mr. Evans did not live with her and she did not give him permission to enter the home. Ms.

Brown allowed officers to search the home, and they recovered a blue semiautomatic firearm loaded with seven live rounds. According to the State, this firearm was the same one that the officer earlier observed Mr. Evans place in his pocket.

¶ 8    The State told the judge that, at the time of this incident, Mr. Evans was not on his own land or abode, legal place of business, or on the land or legal dwelling of another person as an invitee with that person's permission, the firearm was uncased, loaded, and immediately accessible, and Mr. Evans had neither a valid Firearm Owners Identification card nor a concealed carry permit. Moreover, Mr. Evans was previously convicted of criminal drug conspiracy in case No. 07 CR 0928105 and robbery in case No. 04 CR 2747101.

¶ 9    The trial court accepted the pleas and ordered a presentence investigation (PSI). Defense counsel told the court that Mr. Evans requested that the PSI be expedited.

¶ 10    The PSI stated that Mr. Evans had obtained a GED and had six children, although he was unsure where his wife and children currently lived. He previously worked at car washes, reported a marijuana problem, and was involved in the Black Disciples gang. Mr. Evans had convictions for manufacture or delivery of heroin in case No. 03 CR 4234, robbery in case No. 04 CR 27421, criminal drug conspiracy in case No. 07 CR 928105, and home invasion in case No. 10 CR 1835201.

¶ 11    On May 16, 2019, defense counsel told the trial court that he sent "multiple" subpoenas to the Chicago police department seeking information related to Mr. Evans's prior convictions and a murder he witnessed. Counsel thought there was "perhaps" beneficial information not yet received. Counsel reported to the court that although he recommended a continuance to obtain the documents, Mr. Evans "insisted," against counsel's advice, that the matter proceed to sentencing.

¶ 12    The court noted that Mr. Evans's PSI report was "almost blank in every spot." The court

asked defense counsel whether he reviewed the PSI report with Mr. Evans. Counsel answered affirmatively and noted that the page listing Mr. Evans's criminal history was "lacking and inaccurate." The court asked Mr. Evans if he wanted the PSI redone. Mr. Evans stated he answered the questions to the best of his knowledge and wanted to proceed.

¶ 13 The State then listed corrections to the PSI report, including that Mr. Evans entered a plea of guilty to possession of a controlled substance in case No. 03 CR 4234 and received two years' probation, and that the case number for Mr. Evans's robbery conviction should be 04 CR 27471. Additionally, case No. 10 CR 1835201 was charged as a home invasion but reduced to attempted burglary and Mr. Evans was sentenced to three years in prison. The State also indicated that Mr. Evans had three misdemeanor convictions, two for possession of cannabis and one for criminal trespass to land.

¶ 14 Defense counsel told the court that Mr. Evans denied gang involvement. He lived with his seven-year-old son and the child's mother and worked at a car wash for two years. Mr. Evans and his three siblings were raised by their mother and his father was not involved in his upbringing.

¶ 15 The State explained that, in the case on which he was being sentenced, Mr. Evans was on the public way with a firearm that was later recovered from a toy chest in a home where children resided. Further, contrary to Mr. Evans's assertion that he lived with the mother of his child, Ms. Brown had told the police officer that Mr. Evans did not live with her. The State noted that Mr. Evans's criminal background included four felony convictions and three misdemeanor convictions, and during the events that resulted in his conviction for attempted burglary, he was confronted by two witnesses, ages 11 and 13 years old, and grabbed the 13-year-old by her throat. The State added that Mr. Evans was offered "no deals" in this case, and further argued that Mr. Evans should receive "no consideration" for his status as a witness in another case.

¶ 16     Defense counsel replied that Mr. Evans should receive consideration because there were many unsolved murders in Chicago, and he had helped the police after gunshots were fired at him and another man, who later died from his injuries. Counsel stated that, although he lacked the reports to "back this up," Mr. Evans had provided information to the father of the deceased that helped the police in their investigation and had also testified before the grand jury. Counsel also noted that Mr. Evans's arrest in this case occurred not long after that shooting, and he feared for his life, which perhaps explained why he had a firearm. Counsel acknowledged Mr. Evans's "troubled" background, but argued it contained no prior firearm-related offenses.

¶ 17     The court then asked counsel the date of the shooting that Mr. Evans witnessed, and counsel reiterated that he had not received the reports. The court asked Mr. Evans if he wanted to proceed despite counsel's advice to wait, and Mr. Evans replied that he wanted to "[m]ove on with [his] life." In allocution, Mr. Evans apologized for his actions and stated he would use any time in prison to rehabilitate himself.

¶ 18     After considering the statutory factors in aggravation and mitigation, the PSI report and its corrections, and the parties' arguments, the trial court sentenced Mr. Evans to nine years in prison for being an AHC. The court then merged all other counts and sentenced Mr. Evans to a concurrent six-year term for UUWF. Mr. Evans filed a motion to reconsider his sentence alleging his nine-year sentence for being an AHC was excessive in view of his background and the nature of the offense.

¶ 19     At the conclusion of the sentencing hearing, Mr. Evans received nine years in prison for the Class X offense of being an AHC (720 ILCS 5/24-1.7(a), (b) (West 2016)) and a concurrent six-year term for the Class 2 offense of UUWF (720 ILCS 5/24-1.1(a), (e) (West 2016)). These sentences were at the low end of the ranges of sentences available for these crimes. See 730 ILCS

5/5-4.5-25(a) (West 2016) (sentencing range for Class X felonies is 6 to 30 years); 720 ILCS 5/24-1.1(e) (West 2016) (sentencing range for the Class 2 version of UUWF is 3 to 14 years).

¶ 20     On June 10, 2019, the trial court informed Mr. Evans's lawyer that it had two "large subpoena returns" and asked whether he wanted to review the materials. Counsel noted that his arguments at sentencing "encompassed" the information therein and he would rest on the written motion to reconsider the sentence. Counsel explained, however, that he discussed the matter with Mr. Evans and informed Mr. Evans that the materials could reveal further arguments on Mr. Evans's behalf. Mr. Evans told counsel to argue the motion, did not want to "continue the case," and wanted to move forward.

¶ 21     The court told Mr. Evans that it would give counsel time to review the material to determine whether it would cause the court to reconsider his sentence, and Mr. Evans objected. Counsel then asked whether Mr. Evans was sure and recommended a continuance to review the documents from the case where Mr. Evans was a witness. Counsel stated there would only be a week's delay, but Mr. Evans wanted to proceed. Counsel told the court that was "against the advice of counsel." The trial court then denied the motion to reconsider sentence.

¶ 22                                  II. JURISDICTION

¶ 23     Mr. Evans's motion to reconsider his sentence was denied on June 10, 2019, and he timely filed a notice of appeal on June 24, 2019. We have jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 24                                  III. ANALYSIS

¶ 25     On appeal, Mr. Evans contends he was denied effective assistance at sentencing and at the hearing on the motion to reconsider when counsel did not pursue continuances in order to receive

and review potentially mitigating evidence. He argues that this evidence—his cooperation with the State in a first degree murder case—was his "best potential point" in mitigation, and that counsel should have accepted the trial court's offers of continuances, despite Mr. Evans's "express wishes" to proceed.

¶ 26    A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). Ineffective assistance claims should generally be reviewed on direct appeal except in those cases where the record is incomplete or inadequate to resolve the issue. *People v. Veach*, 2017 IL 120649, ¶ 46. When a claim of ineffective assistance is raised for the first time on appeal, our review is *de novo*. *People v. Bustos*, 2020 IL App (2d) 170497, ¶ 87.

¶ 27    A defendant's claim of ineffective assistance is analyzed under the two-pronged test set forth in *Strickland*. *Veach*, 2017 IL 120649, ¶ 29. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *People v. Valdez*, 2016 IL 119860, ¶ 14. To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *People v. Hale*, 2013 IL 113140, ¶ 18; see also *People v. Ford*, 368 Ill. App. 3d 562, 571 (2006) (in the sentencing context, prejudice is shown if there was a reasonable probability that but for counsel's actions, a defendant's sentence would have been different). A claim of ineffective assistance will not succeed if the defendant fails to satisfy either prong. *People v. Jackson,* 2020 IL 124112, ¶ 90.

¶ 28      Here, Mr. Evans contends that counsel was deficient for failing to request a continuance in order to obtain and review the mitigating information contained in the subpoenaed materials, that is, Mr. Evans's cooperation with the State in a murder case. Mr. Evans argues this evidence may have showed that he carried a firearm to protect himself from threats created by this cooperation. He concludes that counsel's failure to pursue continuances is akin to a failure to investigate and constitutes deficient performance.

¶ 29      As the trial record makes clear, Mr. Evans repeatedly informed counsel and the court that he wished to proceed with sentencing and the hearing on the motion to reconsider, despite his counsel's recommendations that the matter be continued. Before this court, Mr. Evans acknowledges his actions, but argues that competent counsel would have overrode his expressed wishes. We do not think that Mr. Evans has made a showing that his counsel's actions fell below an objective standard of reasonableness.

¶ 30      While Mr. Evans tries to frame this as a case where counsel failed to investigate and present evidence in mitigation at sentencing, the record reveals that counsel spoke with Mr. Evans, learned about the case in which Mr. Evans was a witness, and subpoenaed information to investigate the issue and Mr. Evans's criminal background. Mr. Evans argues, however, that his lawyer was deficient in not seeking a continuance, so that the subpoenaed materials would arrive before the sentencing, and in not then taking a continuance before proceeding on the motion to reconsider the sentence, so that he could review the materials.

¶ 31      Mr. Evans is correct that a continuance is not a matter on which a lawyer must abide by his client's wishes. See *People v. Phillips*, 217 Ill. 2d 270, 281, (2005) (listing five decisions that ultimately belong to a client after consultation with an attorney.) However, although counsel was not required to adhere to Mr. Evans's request to proceed, under ethics rules, it was appropriate for

counsel to confer with Mr. Evans on how he wanted to proceed. See Ill. R. Prof'l Conduct (2010) R. 1.2 (eff. Jan. 1, 2016) (for matters on which a lawyer is not required to abide by his client's decisions, a lawyer shall "consult with the client as to the means by which they are to be pursued"). Thus, counsel was properly trying to consider his client's expressed wishes in this case.

¶ 32    Although counsel deferred to Mr. Evans desire to proceed without a continuance,  counsel still argued in mitigation based upon those facts available to him. Counsel argued that Mr. Evans cooperated with police in a murder case, and that this could have explained why Mr. Evans was carrying a firearm. Moreover, although Mr. Evans received a sentence that was three years more than the minimum, the sentence was at the low range of potential sentences he could have received. We cannot conclude that counsel's decision to go forward in accordance with his client's express wishes was objectively unreasonable, such that Mr. Evans did not receive effective assistance from his counsel.

¶ 33    The State also argues that Mr. Evans cannot show prejudice because he cannot establish that the result of either the sentencing hearing or the hearing on the motion to reconsider would have been different had counsel requested continuances. The record is insufficient to resolve this issue, since we can only speculate as to what the subpoenaed materials contained. See *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 34    However, because Mr. Evans has not met the first prong of the *Strickland* test by showing that his counsel's performance was deficient—a matter that we can resolve on this record—his claim of ineffective assistance must fail. *People v. Jackson,* 2020 IL 124112, ¶ 90.

¶ 35                               IV. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 37    Affirmed.