2024 IL App (1st) 211153-U

No. 1-21-1153

Order filed March 29, 2024

Fifth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 DV 41235 |
| | ) | |
| EMANUEL VIEYRA-MARTINEZ, | ) | Honorable |
| | ) | Terence MacCarthy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

ORDER

¶ 1    *Held*: The defendant's conviction is affirmed where his trial counsel did not offer ineffective assistance of counsel.

¶ 2    Defendant-Appellant, Emanuel Vieyra-Martinez, was charged with one misdemeanor count of domestic battery. The circuit court conducted a bench trial and found him guilty of the charge of domestic battery. On appeal, he argues that he was provided with ineffective assistance of counsel for (1) trial counsel's failure to raise the issue of self-defense and (2) stipulating to live

witness testimony without his consent. For the reasons that follow, we affirm Mr. Vieyra-Martinez's conviction.

¶ 3                               BACKGROUND

¶ 4     On August 31, 2020, Mr. Vieyra-Martinez was charged with one misdemeanor count of domestic battery. Mr. Vieyra-Martinez elected to proceed with a bench trial. At the beginning of the trial, the parties agreed to stipulate that if called, Amelia Galvez would testify that she was present in the home and heard the incident. She would testify that she did not come out of the bedroom and that she didn't call the police to the home. She would also testify that she did speak to the police when they arrived.

¶ 5     The State then presented the complaining witness, Gloria Galvez. Gloria testified that she has one daughter, and that her daughter's father is Mr. Vieyra-Martinez. On the night of the incident, she was in her bedroom with her mother, Amelia Galvez, and her baby in the apartment she shared with Mr. Vieyra-Martinez. At approximately 10:45 pm, she went to the kitchen to get formula for the baby.

¶ 6     Mr. Vieyra-Martinez was sitting on the couch in the living room when Gloria went into the kitchen. She testified that when she was on her way back to her bedroom, Mr. Vieyra-Martinez began insulting her. She told him to "please respect me" and not offend her. According to Gloria, Mr. Vieyra-Martinez got up and started hitting her on her left cheek. She stated that she tried pushing him away, but he started pulling her hair. He then threw her against the wall with both of his hands on her chest. She testified that he left bruising on her chest and redness on her left cheek. She then went into her bedroom and called the police. While on the scene, police took pictures of her injuries.

¶ 7    Gloria also testified that her mother, Amelia, was present at the home during the incident. She stated that Amelia heard the conversation between her and Mr. Vieyra and did not leave the bedroom because she was protecting Gloria's baby. She also stated that Amelia did not call the police because she does not speak English and was carrying Gloria's baby.

¶ 8    Mr. Vieyra-Martinez then testified that on the night of the incident, he was home in the living room when he and Gloria started to have an argument. He stated that he raised his voice at her but that he did not hit her, push her against the wall, or pull her hair. He denied ever having hit Gloria during their relationship. He also stated that he would notice that Gloria would get red in her face and chest when she gets mad. According to Mr. Vieyra-Martinez, the redness that he would notice on those occasions was similar to the redness he saw in the photographs of Gloria's injuries.

¶ 9    On cross examination, Mr. Vieyra-Martinez stated that he was in the living room sleeping and did not see Gloria pass by the living room. He denied that he had insulted Gloria's physical appearance while he was in the living room and denied that he had put his hands on her. On redirect-examination, he testified that as he awoke from sleeping, a verbal argument began between him and Gloria.

¶ 10    At the close of the trial evidence, the trial court found Mr. Vieyra-Martinez guilty of domestic battery. The court stated that it made credibility determinations based "not only on the content of the parties' testimony, but also their demeanor," as well as the photographs admitted in the trial. The court stated that the stipulation regarding Amelia Galvez's testimony did not disprove either of the parties' version of events because she did not see the incident. The court believed that the police would not have been called if the incident had not occurred as testified to by Gloria

Galvez. As to the photographs depicting Gloria's injuries after the incident, the court found that she received injuries consistent with her testimony. The court also stated that it did not believe Mr. Vieyra-Martinez had never struck Gloria, believing that "he was somewhat waffling, unclear – or at best about whether or not there was even an argument in this matter." Mr. Vieyra-Martinez was sentenced to 12 months conditional discharge with domestic violence classes to be started a month from the date of the sentencing hearing.

¶ 11    On April 22, 2021, Mr. Vieyra-Martinez filed a motion for new trial, arguing that the State failed to prove him guilty of the charge beyond a reasonable doubt and that he was denied his right to effective assistance of counsel. Regarding the ineffective assistance of counsel claim, he contended that Amelia Galvez was listed in the discovery but was never interviewed; that counsel stipulated to Amelia's testimony without his consent; and that counsel did not use the affirmative defense of self-defense.

¶ 12    On July 2, 2021, the trial court heard evidence and arguments for Mr. Vieyra-Martinez's motion for new trial. Grzegork Florek, Mr. Vieyra-Martinez's trial counsel, testified that he spoke with Mr. Vieyra-Martinez multiple times over the phone and at least once in his office. Each time they spoke, an interpreter was present. When he met with Mr. Vieyra-Martinez at Mr. Florek's office, he asked Mr. Vieyra-Martinez for his version of events. According to Mr. Florek, Mr. Vieyra-Martinez did not tell him that Gloria Galvez attacked him while he was sleeping, nor did he assert that he acted in self-defense.

¶ 13    Regarding the stipulation, Mr. Florek stated that he never tried to contact Amelia Galvez. He testified that he did not interview Amelia and that did not know if his office attempted to contact her. He stated that Amelia had left the state or the country and that he had "fairly lengthy

discussions" about it with the State and the trial court. According to Mr. Florek, he explained the situation to Mr. Vieyra-Martinez who then agreed to proceed with the stipulation. He denied that Mr. Vieyra-Martinez told him that Amelia was "an actual witness" to what occurred between Gloria and Mr. Vieyra-Martinez.

¶ 14     Mr. Vieyra-Martinez then testified that he met with Mr. Florek one time before trial with the assistance of an interpreter. He testified that he told his attorney that Gloria Galvez attacked him while he was sleeping, but that he did not strike her. He also asserted that he never told his attorney that Amelia Galvez was out of the country, nor did he give his attorney consent to stipulate to her testimony.

¶ 15     After the parties concluded their arguments, the trial court denied Mr. Vieyra's motion for new trial. The court found Mr. Florek's testimony to be credible and found it "odd" that Mr. Vieyra would deny hitting Ms. Galvez but still claim self-defense. The court went on to find that Mr. Vieyra's testimony was inconsistent with self-defense. Mr. Vieyra now appeals the trial court's order.

¶ 16                                    ANALYSIS

¶ 17     We note that we have jurisdiction to consider this matter, as Mr. Vieyra filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL 128077, ¶ 25.

¶ 18     Mr. Vieyra argues that the trial court erred in denying his motion for new trial based on his claim of ineffective assistance of counsel. Mr. Vieyra contends that he received ineffective assistance of counsel where his attorney (1) did not raise the issue of self-defense and (2) stipulated to live witness testimony without his consent.

¶ 19 To prevail on a claim of ineffective assistance of counsel, "a defendant must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, a defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687). "Effective assistance of counsel refers to competent, not perfect representation." *Evans*, 209 Ill. 2d at 219 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Hayes*, 2021 IL App (1st) 172417, ¶ 78 (finding that the decision to not file a motion to suppress is typically a matter of trial strategy, in which courts of review give great deference to counsel's decision).

¶ 20 To establish the second prong of *Strickland*, prejudice, a defendant must show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 21 As to Mr. Vieyra-Martinez's first claim, he asserts that his counsel was ineffective for failing to raise the theory of self-defense. Specifically, he argues that he was "entitled to a self-defense theory, unless there was a specific, strategic reason to forgo the defense." Generally, the decision of which theory of defense to present is a matter of trial strategy. *People v. Little*, 2021 IL App (1st) 181984, ¶ 52. Matters of trial strategy do not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testimony. *People v.*

*Patterson*, 217 Ill. 2d 407, 441 (2005). Typically, we grant great deference to trial counsel on matters of trial strategy and evaluate counsel's performance from his perspective at the time rather than through the lens of hindsight. *People v. Perry*, 224 Ill 2d. 312, 344 (2007).

¶ 22    The Illinois self-defense statute states that "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2010). In order to assert a claim of self-defense, "the defendant must establish some evidence of each of the following elements: (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed; and (6) his beliefs were objectively reasonable." *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). If the State disproves any of these elements, the defendant's claim of self-defense must be rejected. *People v. Lee*, 213 Ill. 2d 218, 225 (2004).

¶ 23    In the instant case, Ms. Gloria Galvez testified that Mr. Vieyra-Martinez attacked her without provocation. Further, his own testimony, both at trial and at his motion for new trial, does not support a theory of self-defense. Both times Mr. Vieyra-Martinez testified, he stated that he never touched Ms. Gloria Galvez during the incident. This is also consistent with Mr. Florek's testimony that Mr. Vieyra-Martinez did not tell him that he acted in self-defense. As the evidence presented does not suggest Mr. Vieyra-Martinez acted in self-defense, we cannot conclude trial counsel's performance was deficient for abandoning the affirmative defense. We need not address the prejudice prong as we have not found counsel's performance deficient.

¶ 24    Alternatively, Mr. Vieyra-Martinez argues ineffective assistance because his trial counsel

stipulated to Ms. Amelia Galvez's testimony without his permission. Decision regarding which witnesses to call are also a matter of trial strategy. *People v. West*, 187 Ill. 2d 418, 432 (1999). "The mere use of a stipulation does not demonstrate ineffective assistance of counsel." *People v. Morris*, 2014 IL App (1st) 130512, ¶ 40. However, an incorrect or erroneous stipulation that satisfies both prongs of *Strickland* may establish that counsel was ineffective. *Id.*

¶ 25    Here, the parties stipulated that if Ms. Amelia Galvez was called, she would testify that she did not see the incident between Mr. Vieyra-Martinez and Ms. Gloria Galvez and that she did not call the police. Mr. Vieyra-Martinez does not dispute the contents of the stipulated testimony. Rather, he suggests that the stipulation prevented him from advancing his argument that a physical altercation never occurred between him and Ms. Gloria Galvez because Ms. Amelia Galvez did not call the police. However, as the State points out, trial counsel used the stipulation to make this same argument in his closing. The trial court also addressed this argument, stating that the fact the police were called led the court to believe the events occurred as testified by Ms. Gloria Galvez. Further, the trial court noted that as Ms. Amelia Galvez did not witness the incident, her testimony would not disprove either parties' version of events. Defense counsel cannot be deemed incompetent where a witness' live testimony would not have added any more than the stipulation already covered. *People v. Eggleston*, 363 Ill. App. 3d 220, 227-28 (3d Dist. 2006). Thus, we conclude that trial counsel's assistance was not deficient, and therefore, we will not address the issue of prejudice.

¶ 26                           CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgement of the circuit court.

¶ 28    Affirmed.